THE STATE OF OHIO, APPELLEE, *v.*
GINOCCHIO, APPELLANT.

(No. CA86-11-082—Decided
August 3, 1987.)

*George E. Pattison,* prosecuting attorney, and *Lawrence R. Fisse,* for appellee.

*James M. Looker,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the County Court of Clermont County.

On August 23, 1986, Trooper James Adams of the Ohio State Highway Patrol was outside his cruiser on a traffic stop on the Route 28 exit ramp from Interstate 275 when he observed the vehicle of defendant-appellant Chris Ginocchio approaching the ramp. After observing the vehicle go off the right side of the roadway several times, Adams waved appellant to a stop.

When Adams approached the vehicle, which had stopped in the middle of the driving lane, he noticed that appellant "had a dazed look on his face" and "appeared disoriented." Adams also testified that appellant had a "very glassy and bloodshot look to his eyes" and a "very strong odor of an alcoholic beverage on his breath."

Suspecting intoxication, Adams had appellant step out of the vehicle in order to perform a field sobriety test. Adams first administered a horizontal gaze nystagmus test,[1] which indicated "the consumption of a great deal of alcohol." He next administered a one-leg stand test, which appellant was unable to perform without putting his foot down several times or raising his arms. Adams then arrested appellant and escorted him to the cruiser because appellant was "extremely unsteady on his feet."

On the morning of trial, October 24, 1986, appellant made a motion *in limine* to preclude evidence or testimony on several different issues. The trial court sustained the motion as to all issues except the horizontal gaze nystagmus test. The matter was then tried before a jury and appellant was found guilty of driving under the influence of alcohol in violation of R.C. 4511.19(A)(1). The trial court sentenced appellant to one hundred eighty days' incarceration, one hundred sev-

---

[1] The horizontal gaze nystagmus test is performed by having the individual move his eyes as far to the side as possible. If the individual is intoxicated, the eyes will begin to jerk as they approach the side. The extent of impairment is indicated by the angle at which the eyes begin to jerk.

enty of which were suspended, and imposed a $1,000 fine, $700 of which was suspended, and a six-month driving suspension. Appellant filed a notice of appeal on November 21, 1986 and set forth a single assignment of error for our consideration.

### First Assignment of Error

"The trial court committed prejudicial error in overruling the defendant's motion *in limine* and admitting the results of a horizontal gaze nystagmus eye test into evidence over the defendant's objection."

Before a court of appeals may address the merits of any appeal, it must first possess the requisite jurisdiction to do so. In a criminal case, jurisdiction is conferred upon the filing of a notice of appeal with the clerk of the trial court within thirty days of the date of the entry of the judgment or order appealed from. App. R. 4(B). "Judgment" is defined in Crim. R. 32(B), which states:

"A judgment of conviction shall set forth the plea, the verdict or findings and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk."

In reviewing the record *sub judice,* we were unable to locate a judgment entry meeting the criteria of Crim. R. 32(B). The only document which could arguably be considered a judgment is a docket form which was apparently filled out and signed by the trial judge. The form contains numerous handwritten dates and notations concerning the proceedings from arrest through trial and sentencing.

In *State* v. *Tripodo* (1977), 50 Ohio St. 2d 124, 4 O.O. 3d 280, 363 N.E. 2d 719, the Ohio Supreme Court stated that "[a] document not labeled a judgment nor unequivocally intended to be

a judgment does not constitute a judgment triggering the time within which to file a notice of appeal." *Id.* at 126, 4 O.O. 3d at 282, 363 N.E. 2d at 721. The aforementioned docket form is not labeled a judgment and it is certainly not clear whether it was intended to be a judgment. Regardless of the trial court's intention, however, the form is still insufficient under Crim. R. 32(B) because it bears no time stamp or other indication that it was entered on the court's journal by the clerk.

Much to our dismay, this court has noted an increasing tendency on the part of some municipal and county courts to rely upon handwritten forms such as the one involved here, or even upon brief notations on the case file or jacket, as their judgment entries. Such conduct clearly deviates from Crim. R. 32(B) and M.C. Sup. R. 7, and can no longer be tolerated.

Whether it be a municipal, county, or common pleas court, the same basic procedural formalities must be followed in order to assure that the parties, particularly the defendant in a criminal case, are fully aware of the time from which the thirty-day limitation of App. R. 4(B) commences to run. *State* v. *Tripodo, supra.* Therefore, in all criminal cases appealed to this court, a formal final journal entry or order must be prepared which contains the following:

1. the case caption and number;
2. a designation as a decision or judgment entry or both;
3. a clear pronouncement of the court's judgment, including the plea, the verdict or findings, sentence, and the court's rationale if the entry is combined with a decision or opinion;
4. the judge's signature; and
5. a time stamp indicating the filing of the judgment with the clerk for journalization.

Only by compliance with the above formalities can this court be assured

that it is correctly and completely informed of the trial court's judgment or other order from which an appeal is being taken.

Turning to the case *sub judice,* we find that the docket form filled out by the trial judge does not constitute a final judgment from which an appeal may be taken. Although the form does contain most of the information required by Crim. R. 32(B), it bears no time stamp from which we can determine the timeliness of this appeal and our own jurisdiction to hear the case. Therefore, due to the lack of a final appealable order, this appeal must be and is dismissed.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, dismissed.

*Appeal dismissed.*

JONES, P.J., HENDRICKSON and KOEHLER, JJ., concur.